Filed 9/13/21  P. v. Osbourn CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DAVID OSBOURN,<br><br>      Defendant and Appellant. | A161126<br><br>(Mendocino County<br>Super. Ct. No.<br>SCUK-CRCR-202033913) |

Defendant David Osbourn appeals from a judgment entered after he pled no contest to one count of possession of child pornography.  Defendant's court-appointed counsel has filed a brief asking this court for an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436.  Defendant was informed of his right to file supplemental briefing and has not filed such a brief.  We have reviewed counsel's brief and independently reviewed the record, and we find no errors or other issues requiring further briefing. Accordingly, we affirm.

On January 2, 2020, defendant was charged by a two-count felony complaint with possession of matter depicting sexual conduct of a child under 18 years of age (Pen. Code,[1] § 311.11, subd. (a)), and sale or distribution of

---

[1] All further references are to the Penal Code unless otherwise stated.

1

obscene matter depicting a person under the age of 18 years engaging in sexual conduct (§ 311.1, subd. (a)).

At a preliminary hearing, Ukiah police detective Ronald Donohue testified that the investigation into the charges against defendant began in 2018 when the police department received a CyberTipLine Report (CTR) from the National Center for Missing and Exploited Children about child pornography images uploaded to a Twitter account. The CTR contained a name, phone number, and six IP addresses. An investigation ensued that eventually linked the IP addresses to places where defendant had been (his father's residence and a Motel 6). Subsequently, when a Motel 6 manager told Donahue that defendant was staying at the motel, Donahue obtained a warrant to search defendant, the motel room, the vehicle defendant had parked at Motel 6, as well as the residence in the address listed in defendant's DMV record and all vehicles associated with him. Defendant was present on the day of the search at Motel 6 (May 9, 2018) but not arrested.

The search of defendant, his room at Motel 6 and the minivan defendant had been driving resulted in the seizure of, among other things, two cell phones and a digital camera. Subsequent manual searches and data extractions from the phones disclosed multiple images of child pornography, child erotica, and adult pornography. One of the images was a video on the telephone of a man about age 60 having sexual intercourse with a girl who was about 10 years old. Another was a prepubescent boy 6 to 10 years old penetrating the vagina of a nude teenage female. On one seized cell phone there were web history searches, social media apps and chat apps evidencing that defendant searched for and solicited child pornography and was looking for other people searching for the same type of material.

2

At later points in the investigation, and after defendant had received his *Miranda* rights and was not under arrest, defendant told detectives who interviewed him that he viewed child pornography, that he had done so more than once, that he searched for it online, and that he asked others to masturbate to images after sending them to other people. He admitted trading child pornography five times.

At the conclusion of the preliminary hearing, defendant was held to answer on both counts alleged in the complaint. Defendant was arraigned on the two-count felony information on February 10, 2020. The case was set for trial on a no-time-waiver basis.

At a pretrial conference on March 11, and again on March 18 at a bail motion (which successfully resulted in defendant's release to home confinement with a promise to appear), the district attorney would not make an offer to resolve the case.

On April 2, with defendant's agreement, the court vacated the jury trial date and reset the trial for June 1, with motions in limine on May 28 and a pretrial conference on May 7. At the May 7 pretrial conference, the trial was rescheduled for July 6, with the concurrence of counsel and in light of the public health emergency.

The district attorney continued to refuse to make any offers to resolve the case. Eventually the parties reached a disposition. On July 2, the rescheduled date for hearing on motions in limine, defendant entered a change of plea. Defendant pled no contest to count 2, a violation of section 311.11, subdivision (a), with a maximum term of confinement of three years in state prison. The district attorney agreed to dismiss count 1 (§ 311.1, subd. (a)), with a *Harvey*[2] waiver. The plea was open, with no agreement as

_____

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

3

to sentence. The trial court made clear the range of sentencing options, from probation to a state prison commitment, and the sentencing consequences. Defendant completed a Judicial Council plea form, with explanations and waiver of rights. The form was signed and initialed by defendant, and signed by defense counsel, the deputy district attorney and the trial judge. In addition to the change of plea form, the court engaged in extensive colloquy with defendant. With the concurrence of counsel, the court found that the preliminary hearing transcript provided a factual basis for the no contest plea. The court found defendant knowingly, voluntarily and intelligently waived his rights and entered a plea of no contest.

The court appointed Dr. Kevin Kelly, a psychologist, to examine defendant and prepare a presentence report as to defendant's mental condition pursuant to section 288.1. Dr. Kelly's detailed report, written without benefit of the probation office's presentence report which had not yet been prepared, concluded that defendant "fits within DSM-V criteria for Pedophilic Disorder." Dr. Kelly opined that defendant "knows his behavior is wrong and illegal, but he shows limited insight and remorse regarding the negative impact on children." Dr. Kelly recommended at least one year and perhaps five years of treatment, and assessed defendant as having a "low risk of re-offense during the period of treatment" if he were treated within the community on probation.

The probation officer prepared a comprehensive presentence report and recommended that defendant be sentenced to state prison for the middle term of two years.

At the sentencing hearing on August 21, defense counsel argued at length that defendant should receive probation. Defendant was 54 years old at the time of sentencing, had no prior criminal record, and had a number of

4

physical conditions.  He had no previous experience in a sexual relationship with another person.  In defense counsel's view, defendant, contrary to the probation officer's observations, did make statements in the probation report that were tantamount to expressing remorse and wrongdoing, perhaps masked by the fact that defendant had a "very lethargic demeanor," and was not the "most demonstrative or the most emotional or the most verbal of men and that may have had an impact on probation's recommendation as well." Defense counsel informed the court that defendant's life revolved around taking care of his father and providing transportation to him, and that defendant had orthopedic problems and cardiac problems, with a surgical procedure for atrial fibrillation scheduled for September 16.  Defense counsel also expressed concern that the nature of the offense would make defendant vulnerable in the prison population and that because of his physical conditions and age he would be at risk for COVID-19 in custody.[3]

The prosecutor argued that the general objectives of sentencing under California Rules of Court, rule 4.410 militated in favor of a state prison term, and that, balancing the aggravating and mitigating factors, the middle term of two years was appropriate.  The prosecutor discussed the underlying facts of the case in detail, a subject he noted defense counsel had avoided.

The trial court gave defense counsel an opportunity to respond, and he did, again at length.  Defense counsel focused on defendant's admissions in the probation report as actual statements of remorse.  He stressed the relatively limited period of time that defendant was involved with child pornography (2017 to 2018), and he disagreed with the probation office's conclusion that the crime was sophisticated and on public property.

---

[3] Defense counsel referred to a sentencing memorandum that he had prepared, but it is not in the record.

Upon receiving documents at the sentencing hearing that defendant was scheduled for surgery, the court continued the sentencing hearing until after the surgery. But before the hearing concluded, the court stated, "I think this case really teeter totters on a grant of probation and the low or midterm prison sentence. And Dr. Kelly's report doesn't provide a lot of answers, certainly [the prosecutor] read some of the relevant information, but the defendant[']s lack of insight into how this type of crime really does victimize other people, children in particular concerns me because it leaves me lacking the confidence that you can really control your behavior in the future if you don't understand the magnitude of the harm that child pornography really imposes on young people."

At the continued sentencing hearing on October 2, the court clarified that it had read and considered the probation officer's report filed on August 21 in advance of the first sentencing hearing. The court permitted defense counsel to make any further argument. Defense counsel accepted the invitation, and succinctly noted that defendant had experienced "intense isolation" throughout his life, that his job as a night stocker at Wal-Mart (from which he retired) did not require much "interpersonal contact or interpersonal intellectual stimulation," and that he had never had a sexual relationship. Defense counsel characterized Dr. Kelly's report as "positive." He reemphasized defendant's vulnerability in prison because of his medical condition, age, impairment, and the nature of the offense. And he noted defendant's care and transportation of his father. Defense counsel also referred to two letters to the court—one from defendant and one from his sister—and reiterated that defendant was remorseful and would, per Dr. Kelly, respond to treatment and have a low risk to reoffend.

The prosecutor responded that defendant's electronic devices had 42 images of juveniles as young as two years old engaging in sexual acts and that defendant was "actively involved in trading those images." The prosecutor also contended that defendant "took advantage of his employment at [a local skating rink] to target young girls in the community and take photographs of them without their consent and send them to others that are like minded and exchanged rather graphic responses to—from these other folks that he was trading these images to" and that they would masturbate on the photographs and then send them back to defendant.[4] The prosecutor disputed that the defendant's belated letter to the court stating "I am sorry for what happened to the kids and being part of the process" was evidence of insight or that he understood the impact of his conduct. The prosecution argued that "probation got it right" and asked the court to sentence defendant to state prison.

Defense counsel responded that the point of treatment was to gain insight, and that it was "not a criminal offense to be aroused by minors. The offense is possession of child pornography, for which he certainly is responsible . . . ."

After this extended argument on the second day of the sentencing hearing, the court gave a lengthy exposition on the reasons for the sentence it was about to impose. The court acknowledged defendant's lack of a prior criminal record, age, and health concerns. But the court found the

---

[4] The presentence investigation report prepared by the probation officer summarizes a Ukiah Police Department report of the investigation which goes into detail about the social media contacts defendant had with local juveniles he met when he worked for a local skating rink, his sexual messages to at least one of them, and nonpornographic images of two of them. One of the photographs in the CTR was a photograph of a phone with semen on it and a local girl depicted on the screen of the phone.

circumstances of the offense "extremely troubling" and did not consider Dr. Kelly's report "actually all that positive" for defendant. Even the belated letter of apology from defendant did not "satisfy [the court's] concerns about the lack of insight."

The trial court sentenced defendant to the low term of 16 months in state prison, "because of his lack of record." That sentence would "carry out the objectives of sentencing" to "deter future conduct" and "deterrence in the community." In so doing, the court stated it was balancing the circumstances in aggravation and in mitigation. Defendant was given credit for 72 actual custody credit and 72 credits pursuant to section 4019, for a total of 144 days credit for time served. The court did not impose the penal fine under section 311.11 recommended by the probation office. The court imposed a $300 restitution fine (§ 1202.4), a $40 security fee (§ 1465.8, subd. (a)(1)), and a $30 conviction assessment (Gov. Code, § 70373) (collectively, fines and fees).

After judgment was entered and while this appeal was pending, the trial court issued a written order granting defendant's request to strike/stay the fines and fees, "[g]iven the court's findings and related statements on the record at the time of sentencing regarding this defendant's ability to pay." The court issued an amended abstract of judgment reflecting this order.

We have reviewed the record on appeal for any arguable issues.

Defendant was sentenced after a no contest plea and did not obtain a certificate of probable cause. Any issues as to the validity of his plea are not before us. (§ 1237.5.) Before entering his no contest plea, defendant was advised of his rights, and there is no indication he did not understand his rights, including the rights he was waiving. The court found defendant had knowingly, voluntarily, and intelligently waived his rights and his plea was voluntary. There was a factual basis for the plea.

8

The sentence imposed is authorized by law. Custody credits appear to have been calculated correctly.

Based on our review of the record, defendant was represented by competent counsel who acted to protect his rights and interests.

We conclude there are no arguable issues within the meaning of *People v. Wende, supra*, 25 Cal.3d 436.

The judgment is affirmed.

_____

Miller, J.


WE CONCUR:


_____

Richman, Acting P.J.


_____

Stewart, J.


A161126, *People v. Osbourn*